IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS GILLIAM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 13-1557 |
| | ) | |
| VERIZON PENNSYLVANIA, INC., | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

Presently before the Court is a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Defendant, seeking to dismiss Counts II, III and IV of Plaintiff's Second Amended Complaint on the ground that he did not exhaust his administrative remedies with respect to these claims. For the reasons that follow, the motion will be denied.

Plaintiff, Louis Gilliam, brings this action pursuant to 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), alleging that Defendant, Verizon Pennsylvania, Inc. (Verizon), discriminated against him on the basis of his race (African American) and in retaliation for complaining about racial discrimination when it suspended him and later terminated him from his position as a Systems Technician on April 20, 2012 (allegedly on the basis of a criminal investigation concerning him) and when it failed to reinstate him once the criminal complaint against him was dismissed on December 11, 2013.

### Facts

Plaintiff worked at Verizon from on or about May 18, 1998 until he was terminated on April 20, 2012. (Second Am. Compl. ¶ 9.)[1] At the time of his discharge, he held the position of Systems Technician. (Second Am. Compl. ¶ 10.) He received outstanding performance reviews during the thirteen years and eleven months as an employee and was never issued a disciplinary

---

[1] ECF No. 45.

action. (Second Am. Compl. ¶ 11.)

On March 16, 2012, United States Drug Enforcement Agency (DEA) agents entered a Verizon store searching for Plaintiff for allegedly conspiring to distribute cocaine. In order to protect Verizon's reputation, Plaintiff did not return the company vehicle to the store, but instead contacted his supervisor to inform him of his whereabouts and returned the vehicle to a Verizon garage closest to his last job site of the day. DEA agents, with the assistance of Verizon security, searched both the returned vehicle and Plaintiff's personal vehicle but found no incriminating evidence in either vehicle. (Second Am. Compl. ¶¶ 12-15.) The DEA named Plaintiff in a criminal complaint on March 19, 2012 for allegedly conspiring with others to possess with the intent to distribute five kilograms or more of cocaine. (Second Am. Compl. ¶ 16.)

Verizon conducted an investigation into the allegations against Plaintiff and he cooperated with the investigation at all times. (Second Am. Compl. ¶ 19.) On April 20, 2012, Verizon notified Plaintiff of his termination, citing three reasons for the discharge: 1) improper/unauthorized utilization of the company's motor vehicle; 2) involvement in the sale or transfer of illegal drugs; and 3) failure to cooperate with the company's investigation. (Second Am. Compl. ¶ 20.) See Pl.'s Sur-reply Br. (ECF No. 55) Ex. A.

Plaintiff alleges that he was racially profiled treated in a discriminatory fashion by Verizon's Senior Investigator, John Yock, during the investigation and that Yock's behavior when conducting interviews of African-American technicians and employees of Verizon was well-known. (Second Am. Compl. ¶¶ 21-24.) Plaintiff and his union representative complained about Yock's behavior, but no action was taken. Brennan Yarnot, Verizon's Senior Investigator, told Plaintiff that Verizon was only concerned about the allegations concerning distribution of drugs, yet Verizon then cited reasons for termination as "improper/unauthorized utilization of the

2

Company's motor vehicle" and "failure to cooperate with the Company's investigation." (Second Am. Compl. ¶¶ 25-30.)

Verizon's labor relations counsel advised Verizon Security that Plaintiff's failure to return the vehicle at the end of his tour on March 16, 2012 was not a termination type offense and acknowledged that he had legitimate reasons for not returning it. (Second Am. Compl. ¶¶ 31-34.)

On March 11, 2013, Plaintiff filed a charge of discrimination with the EEOC. Defendant notes that he checked the box for "race" as the basis, but not retaliation. (Am. Compl. ¶ 2(e) & Ex. E.)[2]

Plaintiff notes that the United States Attorney filed a motion to dismiss the criminal complaint, which was granted by this Court on December 11, 2013.[3] (Second Am. Compl. ¶ 35.) His employment was not reinstated following the dismissal of the criminal complaint. (Second Am. Compl. ¶ 36.)

Plaintiff's union filed a grievance protesting his discharge, which was moved to arbitration. The arbitration hearing was held on August 7, 2014. On November 14, 2014, the arbitration panel ruled that Verizon did not have proper cause to terminate Plaintiff. His employment was reinstated and he began working for Verizon again on December 1, 2014, approximately one year after the criminal charges were dismissed. (Second Am. Compl. ¶¶ 40-43.) See ECF No. 55 Ex. B.

Procedural History

In the original Complaint, which was filed on October 23, 2013, Plaintiff alleged three claims of employment discrimination: Count I alleged a claim of racial discrimination relating to

---

[2] ECF No. 14.
[3] See Case No. 12-mj-207, ECF Nos. 65, 66.

his termination in violation of Title VII, Count II alleged a claim of retaliation for having opposed racial comments and behavior by Mr. Yock in violation of Title VII and Count III alleged claims of discrimination under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA). On December 23, 2013, Defendant filed a motion to dismiss (ECF No. 8). In response, on January 10, 2014, Plaintiff filed an Amended Complaint (ECF No. 14), which eliminated the PHRA claims in Count III and addressed the technical failure which led to the Complaint being docketed as filed on October 25, 2013, to address the issue Defendant raised in its first motion to dismiss that he filed the case two days beyond the 90-day statute of limitations.

On January 27, 2014, Defendant filed a motion to dismiss the Amended Complaint (ECF No. 17), again arguing that it was untimely because it had not been filed within 90 days of Plaintiff's receipt of the Right-to-Sue Letter from the EEOC. Plaintiff filed a brief in opposition on February 10, 2014 (ECF No. 19). Defendant filed a reply brief on February 24, 2014 (ECF No. 20). On March 7, 2014, a Memorandum Opinion and Order was entered (ECF No. 25), which denied the motion to dismiss.

Defendant filed an answer to the Amended Complaint (ECF No. 27) and the parties engaged in a mediation, which was unsuccessful. However, the parties indicated that an arbitration was being conducted (as noted above) and the case was stayed at that time. On December 10, 2014, the parties reported the results of the arbitration and the matter was again sent to mediation on the remaining issues (ECF No. 35). The second attempt at mediation was also unsuccessful.

On April 20, 2015, Plaintiff filed a motion for leave to file a Second Amended Complaint (ECF No. 41), which Defendant opposed (ECF No. 43). On April 29, 2015, an order was entered granting Plaintiff's motion (ECF No. 44) and the Second Amended Complaint was filed

that same day (ECF No. 45). Count I alleges racial discrimination with respect to the acts leading up to Plaintiff's termination. Count II alleges racial discrimination arising out of Defendant's failure to reinstate Plaintiff after the criminal charges had been dismissed. Count III alleges retaliation with respect to Plaintiff's opposition to racial comments and behavior by Mr. Yock. Count IV alleges retaliation with respect to Defendant's failure to reinstate Plaintiff after the criminal charges had been dismissed.

On May 14, 2015, Defendant filed a partial motion to dismiss Counts II, III and IV of the Second Amended Complaint (ECF No. 50).[4] Plaintiff filed a brief in opposition on May 21, 2015 (ECF No. 52) and Defendant filed a reply brief on June 12, 2015 (ECF No. 54). On June 17, 2015, Plaintiff filed a sur-reply brief (ECF No. 55).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual

---

[4] Defendant filed an Answer with respect to Count I. (ECF No. 49.)

5

enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted). The Court of Appeals has held that: "Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied upon in the complaint* may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir. 2008) (quotation omitted).

Thus, although the Court may consider the documents that were attached to the Amended Complaint, Defendant's citation of two documents attached to its motion to dismiss is a different matter. It proffers a rebuttal letter Plaintiff sent to the EEOC and correspondence from an EEOC investigator to Plaintiff's counsel. Not only are Plaintiff's claims not "based on" these

documents, but consideration of internal EEOC documents and correspondence is not appropriate even on a motion for summary judgment, let alone a motion to dismiss. See, e.g., Berry v. Georgetown Inn, Ltd., 2010 WL 608076, at *2 (W.D. Pa. Feb. 18, 2010); Kirby v. J.C. Penney Corp., 2009 WL 3572494, at *3 (W.D. Pa. Oct. 26, 2009). In addition, it is undisputed that Plaintiff's EEOC charge filed on March 11, 2013 did not include allegations relating to Verizon's failure to reinstate him once the criminal matter was dismissed because those events had not yet occurred and would not occur for another nine months.

Defendant contends that the acts alleged in Counts II, III and IV of the Second Amended Complaint were not reviewed by the EEOC and are thus unexhausted. Plaintiff responds that it was not necessary for him to return to the EEOC to present these claims which related to and arose out of the same circumstances that supported his original complaint.

Exhaustion of Administrative Remedies

The Court of Appeals has explained that:

> A plaintiff "must exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue. See id. at 1020-21…. "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). A plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).

Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013).

Accordingly, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims, even if the actual EEOC

7

investigation fails to reveal any evidence related to the additional charge." Still v. Shinseki, 2011 WL 2650180, at *5 (W.D. Pa. July 6, 2011) (quoting Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984)).  The Court of Appeals has observed that "the policy of promoting conciliation would not be furthered by allowing the defendants to delay having to answer in court for retaliatory action allegedly taken against appellant for asserting her rights." Waiters v. Parsons, 729 F.2d 233, 238 (3d Cir. 1984).

Defendant argues that this case differs from Still and Waiters because the alleged new acts of discrimination did not take place during the EEOC's investigation, but after it concluded. Thus, it maintains that it could not have been part of the EEOC's investigation.  Further, it contends that because these were discrete acts, each one had to be submitted to the EEOC for administrative exhaustion.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Count III: Retaliation with Respect to Events in 2012

In Count III, Plaintiff alleges that his suspension without pay, two days after he complained about being called derogatory names by Mr. Yock, and his subsequent termination constituted acts of retaliatory discrimination.  Defendant contends that these allegations were not presented to the EEOC.  Plaintiff responds that a full review of the charge demonstrates that he was complaining of racially discriminatory conduct by Verizon investigators, which he opposed and formed the basis of his termination.  Thus, he argues that retaliation was reasonably within the scope of his charge.

As an initial matter, the Court observes that, because Plaintiff made this allegation in the Complaint and the Amended Complaint and Defendant did not raise failure to exhaust as an argument in its two previous motions to dismiss, it has waived the right to file another motion to dismiss raising it.  Fed.R.Civ.P. 12(g).  See SEC v. Lucent, 2006 WL 2168789, at *5 (D.N.J.

8

June 20, 2006). "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment of the pleading…." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2004). Rather, this defense would have to be raised in the answer, a motion for judgment on the pleadings, or at trial. Id. § 1385. Nevertheless, even if the argument is considered, it must be rejected.

Defendant contends that Plaintiff failed to check the box for "retaliation" on his EEOC charge.[5] "The failure to check a particular box is not fatal to a Title VII claim, and courts in the Third Circuit liberally construe EEOC charges." Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 499 (W.D. Pa. 2007) (citations omitted). Plaintiff notes that his EEOC charge stated that:

> The behavior of the respondent investigators on March 16, 2012 and during the entire investigation gave me the feeling of being racially profiled…. Respondent's security group went above and beyond their duties by injecting themselves into an investigation without any benefit of doubt as to my involvement or non-involvement, strictly on hearsay. The respondent investigators never saw any documentation from the Drug Enforcement Administration to support their claims.

(Am. Compl. Ex. E.) The charge also indicated that he was suspended without pay on March 23, 2012 and discharged on April 20, 2012.

These allegations could support a claim of retaliation for opposing discriminatory conduct: the investigators made him feel that he was being racially profiled and soon after this occurred he was suspended and then terminated. Therefore, Plaintiff did not need to submit a new EEOC charge with respect to his allegations of retaliatory conduct leading up to his

---

[5] Defendant also contends that Plaintiff asserted no factual allegations or claim relating to retaliation in any of his pre-charge submissions with the EEOC. This is "flat wrong." On his Discharge Intake Questionnaire, he wrote that Yock and Yarnot called him derogatory names and that "after reporting the name calling I was sent back to work only to be suspended without pay 2 days later." (Am. Compl. Ex. A.) This fact distinguishes the case from Mandel, in which the employee admitted she had not reported any harassment to her employer. 706 F.3d at 164.

termination. With respect to Count III, the motion to dismiss will be denied.

<u>Counts II and IV: Claims Arising Out of Failure to Reinstate</u>

Defendant argues that Plaintiff's claims of racial discrimination (Count II) and retaliation (Count IV) arising out of its failure to reinstate him once the criminal complaint was dismissed on December 11, 2013 should be dismissed because Plaintiff did not present them to the EEOC. Plaintiff responds that these claims were within the scope of the EEOC's investigation of the circumstances surrounding his suspension and termination.

The Court must observe that these arguments amount to much ado about nothing. Even if Counts II and IV were dismissed, Plaintiff would still be able to litigate his claims that Defendant discriminated against him based on his race (as alleged in Count I) and retaliated against him (as alleged in Count III). In the context of doing so, the events surrounding the dismissal of the criminal matter and his eventual reinstatement by Verizon would be relevant for the purpose of determining damages.

It was not necessary for Plaintiff to list these incidents as specific "counts" in his complaint. See Fed.R.Civ.P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count….") However, Plaintiff's Second Amended Complaint is very clear. Had he not listed four separate counts, requiring such separation "would constitute a waste of time and judicial resources." <u>Borrell v. Weinstein Supply Corp.</u>, 1994 WL 530102, at *2 (E.D. Pa. Sept. 27, 1994) (rejecting notion that that plaintiff had to separate his claims that defendant violated the ADEA by firing him based on his age and by retaliating against him into separate counts).

Moreover, this Court is unaware of any precedent holding that an employee who was terminated and subsequently not reinstated after the alleged basis for his termination was

10

eliminated is required to list those incidents as separate claims. The gravamen of his allegations is that, although Verizon purports to rely on the criminal complaint as its legitimate, non-discriminatory reason for terminating Plaintiff's employment, once that criminal complaint was dismissed, it refused to take action to undo the termination until compelled to do so by the arbitration panel. In other words, Plaintiff is not contending that he was subjected to another discrete act of discrimination, as if he was laid off from his position and later applied to be rehired for that position but was not because of racial discrimination or retaliation. Cf. Parisi v. Boeing Co., 400 F.3d 583, 586 (8th Cir. 2005) (terminated employee who applied for open positions and was not hired for them had to bring each claim of age discrimination to the EEOC). Rather, he is pointing to Verizon's failure to alter its previous action as evidence of pretext.

Nevertheless, Defendant has not explained why its hyper-technical argument applies in this case in any event. As Judge McVerry observed: "Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case [--] a double filing that would serve no purpose except to create additional procedural technicalities." Still, 2011 WL 2650180, at *5.

For these reasons, the motion to dismiss submitted on behalf of the defendant (ECF No. 17) will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS GILLIAM, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 13-1557 |
| | ) | |
| VERIZON PENNSYLVANIA, INC., | ) | |
| Defendant. | ) | |

ORDER

AND NOW, this 18th day of June, 2015, for the reasons stated above,

IT IS HEREBY ORDERED that the partial motion to dismiss Counts II, III and IV of the Second Amended Complaint filed by Defendant (ECF No. 50) is denied.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge